## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**WILLIAM R. WARD,**

      **Petitioner,**

**v.**                                                    **Case No. 2:13-cv-05312**

**EVELYN SEIFERT, Warden,**
**Northern Correctional Facility,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATION

On March 15, 2013, the petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  (ECF No. 1).  The petitioner is serving a sentence of 55 to 130 years after being convicted, in the Circuit Court of Fayette County, West Virginia, of two counts each of sexual assault in the first degree, incest and sexual abuse by a parent, guardian or custodian, for a total of six counts.   Pending before the court is the respondent's Motion for Summary Judgment.  (ECF No. 18).  This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PROCEDURAL HISTORY AND TRIAL TESTIMONY

In January of 2005, a Fayette County Grand Jury returned a six-count indictment charging the petitioner with two counts each of sexual assault in the first degree, incest and sexual abuse by a parent, guardian or custodian.  (*State v. Ward*, Case No. 05-F-68).  The petitioner's first trial, which began on August 8, 2006, resulted in a mistrial,

after the petitioner's counsel, John R. Mitchell, Sr. fell ill.  The petitioner's second trial began on January 22, 2007.  After jury selection, Mr. Mitchell was excused from further participation in the trial due to an alleged hearing problem.  The petitioner continued to be represented by Mr. Mitchell's co-counsel William Murray and Travis Ellison.

The State presented the testimony of four witnesses.  The first witness was "S.H.,"[1] the alleged victim of the offenses upon which the petitioner was indicted.  S.H. is the step-granddaughter of the petitioner.  S.H. testified that, in or around August or September of 2004 when she was nine years old, she was at a picnic at her uncle's house in Gauley Bridge, West Virginia.  S.H. testified that she went inside the house with the petitioner to fix some chili for hotdogs.  S.H. further testified that she went to the bathroom, and when she came out, the petitioner picked her up and put her on her uncle's bed and pulled down her pants and touched her vagina with both his finger and his tongue.  (ECF No. 18, Ex. 1, Vol. I at 125-128.)  S.H. further testified that she did not immediately tell anyone about this incident because she was scared of the petitioner. She further testified that she eventually told her cousin at school.  (*Id.* at 129).

On cross-examination, S.H. admitted that she had made similar allegations of sexual assault or abuse by an uncle and two cousins.  (*Id.* at 131-135.)  The record does not reflect the time frame of this other alleged abuse.

The State was also permitted to present the testimony of two other alleged victims of sexual assault or abuse by the petitioner.  These alleged victims are the petitioner's sister-in-law, Violet Stephens, and his stepdaughter, Alesha Hiat, who is S.H.'s mother.  Alesha Hiat testified that on numerous occasions from the time that she

---

[1] For privacy purposes, the undersigned will use the alleged victim's initials throughout this document, in accordance with Fed. R. Civ. P. 5.2.

was 11 years old, until she turned 18, the petitioner engaged in instances of touching her on her breasts and vagina, forcing her to perform oral sex on him and him performing oral sex on her and forcing her to watch him masturbate.  These instances of sexual assault and abuse allegedly took place in various places that Ms. Hiat lived with the petitioner in several different states.

On cross-examination, Ms. Hiat was questioned about the petitioner forcing her to end a prior relationship with a boyfriend, and Ms. Hiat's alleged threats to get revenge on the petitioner for his actions in ending that relationship.  Ms. Hiat admitted that she was upset at the petitioner for his role in that breakup, but that she did not make these accusations against him, nor encourage her daughter to make her allegations of sexual assault and abuse, in order to get revenge on the petitioner.

Violet Stephens, the petitioner's sister-in-law, also testified that, on more than one occasion while the petitioner and his wife were living with or visiting her, the petitioner would talk to her about sex and people with whom he was allegedly having sex.  One time, when she was at the petitioner's home in Indiana, she had just gotten out of the shower and was naked, when the petitioner entered the bathroom and would not leave upon her request.  Although he eventually left the bathroom, Ms. Stephens further testified that the petitioner called her into a bedroom and removed her housecoat. Alesha Hiat was also present.  Ms. Stephens testified that the petitioner made her watch him masturbate.  Ms. Stephens further testified that, on another occasion, the petitioner touched her vagina while they were alone together in a car.

Following the testimony of both Ms. Stephens and Ms. Hiat, the court gave a limiting instruction to the jury pursuant to Rule 404(b) of the West Virginia Rules of Evidence.

The State also presented the testimony of Lucy Earl, a social worker employed by Goodwill Family Services in Huntington, West Virginia, who testified about her counseling sessions with S.H.  Ms. Earl testified that S.H.'s descriptions to her about the alleged abuse by the petitioner were consistent and similar to her trial testimony.  Ms. Earl further testified that, based upon her experience and training, S.H.'s symptoms of frequent crying, depression, anger outbursts, and isolation were consistent with a child who had been sexually molested.  (*Id.* at 150.)  Ms. Earl further testified that is it not unusual for a victim of child sexual abuse to conceal the conduct and not readily tell anyone about it because they are afraid of getting the perpetrator in trouble or afraid that no one will believe them.  (*Id.* at 151-152.)

On cross-examination, Ms. Earl testified that S.H.'s disclosure of the alleged abuse took place several months after it allegedly happened, around November or December of 2004.  (*Id.* at 154.)  Ms. Earl further believed that the alleged abuse of S.H. by her other family members supposedly occurred around the same time.  (*Id.* at 155.)  Ms. Earl admitted that the symptoms demonstrated by S.H. could have resulted from any or all of these alleged instances of abuse.  (*Id.* at 156.)

The defense presented the testimony of two witnesses at trial.  The two defense witnesses were two other family members who allegedly witnessed Alesha Hiat make statements to the effect that she would get revenge on the petitioner for forcing her to breakup with her former boyfriend.  (*Id.* at 234-247.)  These two witnesses also testified that they had never witnessed any inappropriate sexual conduct by the petitioner and that they had never heard either Ms. Stephens or Ms. Hiat disclose any evidence of sexual abuse by the petitioner.  (*Id.*)

Following the testimony of these two witnesses, the court recessed for the evening.  Prior to adjourning, however, the petitioner was advised about his right to testify or not, and the consequences thereof.  The petitioner indicated that he intended to testify.  (*Id.* at 251-253).

However, on the second morning of trial, the petitioner failed to appear at the courthouse.  Mr. Murray orally requested a continuance, and was granted one hour to try to locate the petitioner.  (ECF No. 1, Vol. II at 6).  After the one-hour delay, however, the court determined to go forward with the trial in the petitioner's absence, as permitted by Rule 43 of the West Virginia Rules of Criminal Procedure, despite the additional oral motion of the defense to continue the trial.  (*Id.* at 7, 14).  Accordingly, the petitioner did not testify, and was subsequently convicted on all six counts of the indictment.  (*Id.* at 69-71).

On April 11, 2007, the petitioner appeared with new counsel, E. Scott Stanton, and was sentenced to 15 to 35 years on each count of sexual assault in the first degree (Counts One and Four), 5 to 15 years on each count of incest (Counts Two and Five) and 10 to 20 years on each count of sexual abuse by a parent, guardian or custodian (Counts Three and Six).  Counts One, Two, Three, Four and Six were ordered to run consecutively to one another, and Count Five was ordered to be served concurrently with the other counts.

## *Direct Appeal*

On October 3, 2008, the petitioner was re-sentenced in order to re-start the time period for filing a direct appeal.  On April 29, 2009, the petitioner, by court-appointed appellate counsel, Gina M. Stanley, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia (the "SCAWV"), asserting the following assignments of error:

1.      The Circuit Court committed reversible error by allowing the admission of other crimes, wrongs or bad acts during the State's case in chief.

2.      The Circuit Court committed reversible error by allowing the second day of the jury trial to proceed in the absence of Ward without first advising him that the trial would proceed in his absence.

3.      The State failed to establish beyond a reasonable doubt that Ward was the guardian, custodian or parent of S.H. on the day mentioned in the indictment, but the court allowed counts and three and six to go to the jury.

4.      The State failed to establish beyond a reasonable doubt that the sexual organs of S.H. were penetrated in any way since the law of this state defines neither the terms "sexual organs" or "privates," but the court sent counts one and two to go to the jury, and allowed the jury to guess the meaning of such terms.

5.      The State failed to establish beyond a reasonable doubt that Ward was the grandfather of S.H. as that term is defined by the incest statute, and the Court permitted counts four [sic; two] and five to go to the jury without clarifying the meaning of the term "grandfather" for that purpose.

6.      Trial counsel was ineffective thus depriving Ward of the guarantees promised by the Sixth Amendment to the United States Constitution.

(*State v. Ward,* Case No. 090658). (ECF No. 18, Ex. 2).  By order entered on June 3, 2009, the SCAWV summarily refused the petitioner's Petition for Appeal.  Under the SCAWV's rules in effect at that time, because the court summarily refused the Petition for Appeal, no mandate issued.  The petitioner did not file a Petition for a Writ of Certiorari in the Supreme Court of the United States.

### *First State Habeas Corpus Petition and Appeal*

On June 28, 2010, the petitioner filed a *pro se* Petition for a Writ of Habeas Corpus in the Circuit Court of Fayette County.  (Case No. 10-C-170).  That petition raised the following grounds for relief:

1.    Petitioner was denied effective assistance of counsel during his pre-trial proceedings which denied him his right to pursue [sic] to the United States Constitution under the First, Sixth, Fifth and Fourteenth Amendments and also pursuant to Article III, Section 10 and 14 of the West Virginia Constitution.

   a.    John Mitchell, Sr. did not file proper motions to have a mental evaluation of the petitioner to   determine  if he was competent to stand trial.

   b.    William Murray failed to file proper motions to have a mental evaluation of the petitioner before trial, as the evidence showed that the petitioner was not present on the second day of trial because he was mentally incompetent.

   c.    John Mitchell, Sr. withdrew as counsel on the first day of trial, and William Murray was not prepared to defend the petitioner.  The attorneys had not made pre-trial, post motions, or prepared any type of defense, or to call any expert to support the petitioner's actual innocence.    Attorney Murray should have asked for a mistrial or continuance to allow him to file the aforesaid pre-trial motions and prepare a defense.

   d.    William Murray failed to move for a continuance, to obtain medical records, or affidavits of work records of the petitioner which would have supported his actual innocence, and would have impeached the alleged victim's testimony and cast doubt on her credibility.

   e.    William Murray failed to confer with and develop a working relationship with the petitioner, seek discovery, investigate the alleged crimes charged, or interview witnesses.

2.    Appellate counsel was ineffective for failing to obtain and develop the trial court records as more fully supported by said appeal.

3.    Petitioner was denied his basic right to a fair trial when he was forced into going to trial while he was mentally incompetent.

4.    Petitioner's constitutional rights against excessive sentencing as required by the Fifth, Eighth and Fourteenth Amendments to the

United States Constitution and Article III, Sections 5 and 10 of the
West Virginia Constitution.

(ECF No. 28, Ex. 1).

On September 17, 2010, the Honorable John W. Hatcher, Chief Circuit Judge, entered an Order denying the petitioner's habeas corpus petition. The undersigned will address the Circuit Court's findings in greater detail *infra*.

The petitioner appealed the denial of his first habeas corpus petition to the SCAWV. On December 7, 2012, the SCAWV issued a Memorandum Opinion and Order affirming the judgment of the habeas court. (ECF No. 28, Ex. 2).

### *Second State Habeas Corpus Petition and Appeal*

The petitioner filed a second *pro se* Petition for a Writ of Habeas Corpus in the Circuit Court of Fayette County on March 5, 2012. (Case No. 12-C-77 (H)). (ECF 28, Ex. 3). In that petition, the petitioner asserted claims of juror bias and other improprieties in jury selection. (*Id.*)

Judge Hatcher denied the petitioner's second habeas corpus petition on March 26, 2012. (ECF No. 18, Ex. 8). The petitioner appealed the denial of his second habeas petition, and on February 11, 2013, the SCAWV issued a Memorandum Decision affirming Judge Hatcher's decision. (ECF No. 18, Ex. 7; ECF No. 28, Ex. 4).

### *The petitioner's Section 2254 Petition*

On March 15, 2013, the petitioner filed the instant section 2254 petition, raising the following grounds for relief:

1. Ineffective assistance of counsel by William Murray.

   a. Trial counsel, William Murray did not make the proper motions to continue the trial when the petitioner failed to appear on the second day of trial,

and failed to investigate the reason for the petitioner's absence.

b.    Trial counsel failed to obtain records which would have supported the petitioner's actual innocence.

c.    Trial counsel failed to make proper motions for a mistrial or to otherwise ensure that the petitioner received a fair trial when there were concerns of juror bias.

d.    Trial counsel did not move for a mental health evaluation of the petitioner after the petitioner went through a mental breakdown, and was tried when he was mentally ill.

e.    Trial counsel failed to call witnesses who would have cleared the petitioner of the alleged charges.

f.    Trial counsel failed to obtain medical records of the victim, which would have indicated that she was lying about being abused.

g.    Trial counsel failed to file a motion to prohibit the use of other crimes, wrongs or bad acts in the State's case in chief pursuant to Rule 404(b) of the West Virginia Rules of Evidence.

h.    Trial counsel failed to move to dismiss the indictment after the alleged victim testified that the alleged abuse took place at a time when the petitioner was working in another state.

2.    Ineffective assistance of counsel by John R. Mitchell, Sr.

a.    Attorney Mitchell failed to have the petitioner undergo a mental health evaluation.

b.    Attorney Mitchell failed to move to dismiss certain charges that the State failed to prove in its case in chief at the first trial.

c.    Attorney Mitchell failed to file proper motions for a mistrial after learning that certain jurors had discussed the guilt of the petitioner, and that other jurors had family members who had been represented by the trial judge.

9

        d.      Attorney Mitchell was ineffective for failing to step down from the case prior to the trial date in order to allow Mr. Murray to properly investigate the case and prepare for trial.

        e.      Attorney Mitchell failed to research the allegations contained in the grand jury indictment, which would have revealed that the petitioner was working in another state during the time frame in which the abuse allegedly occurred. He also failed to move to dismiss the indictment on this basis.

        f.      Attorney Mitchell failed to file proper motions to have the case dismissed.

        g.      Attorney Mitchell failed to obtain the grand jury transcripts and notes.

3.      The petitioner was incompetent to stand trial due to mental illness.

4.      The petitioner's sentence was excessive.

5.      Ineffective assistance of appellate counsel.

6.      Petitioner was denied a fair trial due to judicial misconduct.

(ECF No. 1).

On September 17, 2013, the respondent filed a Response to the section 2254 petition (ECF No. 17), a Motion for Summary Judgment (ECF No. 18) and a Memorandum of Law in support thereof (ECF No. 19). On October 10, 2013, pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the undersigned notified the petitioner of his right and obligation to file a response to the respondent's Motion for Summary Judgment and the procedures for responding to such a motion, and set deadlines for a response and reply.  (ECF No. 23).

On November 18, 2013, the petitioner filed his Traverse/Response (ECF Nos. 24 and 25).  The respondent did not file a reply brief.  This matter is ripe for adjudication.

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

11

> determination of a factual issue made by a State court shall be presumed
> to be correct.  The applicant shall have the burden of rebutting the
> presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus

proceedings.  *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*,

943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when

there is "'no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

(quoting Rule 56(c), Fed. R. Civ. P.).

## ANALYSIS

### A.     Claims concerning juror bias and judicial misconduct.

In several grounds of his federal petition, the petitioner contends that his jury

selection was flawed because Judge Hatcher knew of and spoke to several prospective

jurors and/or other issues of juror bias.  First, in Ground 1(c) of his federal petition, the

petitioner contends that:

> There was [sic; were] jurors who had spoke [sic; had spoken] to other
> jurors and made the statement (he is Guilty), there was jurors who there
> [sic; their] kin had been represented by the Judge or his firm.  Trial
> Counsel did not take [sic; make] any defense motions to have a mistrial, or
> continuance to obtain a fair trial.

(ECF No. 1 at 10).  The petitioner repeats this assertion in Ground 2(c) of his petition,

which states:

> Attorney Mitchell was ineffective for not filing proper Motions
> when he learned the Jurors either had discussed the guilt of the Petitioner
> before trial started, and some had actually kin, or family that was
> represented by the Court Judge, all which a mistrial should have been
> made.

(*Id.* at 14).

In Ground 6 of his federal petition, the petitioner asserts that he was denied a fair trial because the trial judge did not take any action to declare a mistrial and permitted the case to go forward in spite of these alleged improprieties with the jury pool.  (ECF No. 1 at 22).  The petitioner states:

> Petitioner asserts the Trial Judge, and the County Prosecutor The Judge knew he had juror's [sic; jurors] who had family members who he represented.

> The Trial Judge knew the family of one of the jurors.  Also prosecutor knew the juror Marsico.  Trial Judge also did not take corrective action when he learned that a juror while being question[ed] told the other jurors, the Petitioner is Guilty, it was clear he had caused [sic; cause] to be stricken, and a mistrial to be called.  Trial Judge allowed the case to go forward . . . . When the trial judge failed to conduct an [sic; a] fair hearing and a fair trial, by using jurors that had not only knew the Judge, but had pre-determined  the Guilt of the Petitioner, this denied the Petitioner a fair trial.

(*Id.*)

The respondent's Memorandum of Law in support of his Motion for Summary Judgment addresses these claims as follows:

> The Petitioner argues his trial counsel did not make any motions for a mistrial or a continuance when jurors had prejudged his case and jurors had relatives who were represented by the trial judge or the judge's former law firm.  (Fed. Hab. Pet. Page # 6 Ground 1).

> First, the Petitioner does not identify who these jurors were.  This is a conclusory and, therefore, insufficiently pled ground.

> Second, in dealing with these issues, the Supreme Court of Appeals of West Virginia observed there is no case law stating that when a juror is familiar with the judge that the juror is somehow disqualified from a trial.  Thus, "even if a member of the jury pool did know the judge, such an association would not automatically disqualify the juror from serving on the panel." *State v. Brown*, No. 2002-CA-23, 2003 WL 21342460, at *5 (Ohio Ct. App. June 6, 2003).   "In a small community it will not be uncommon for the trial judge to be acquainted with one or more jurors. There is no merit to the  . . . claim that . . . counsel should have pursued the matter further."  *Gonzalez v. State*, 744 So.2d 1102, 1103 (Fla. Dist. Ct. App. 1999).

(ECF No. 19 at 7-8).

The petitioner's Response states that "Petitioner was denied a fair trial when a juror had spoke[n] to the other jurors, and state[d] he is guilty, all the jurors should have been questioned about their beliefs, or at least trial counsel should have made a motion for a mistrial.  Petitioner could have best developed this issue at a full habeas hearing which he was denied the chance to develop such testimony and records."  (ECF No. 24).

Specifically, there are four jurors that the petitioner's petition challenges.  The first, Ralph Marsico, knew Carl Harris, the prosecuting attorney of Fayette County, who was not trial counsel in this case.  Additionally, Judge Hatcher knew Mr. Marsico's brother, Sam.   Mr. Marsico was questioned about this relationship and indicated that the fact that the judge's familiarity with his brother would not affect his ability to fairly judge the petitioner based upon the evidence presented during the trial.  However, the defense used a peremptory challenge to dismiss Mr. Marsico.  Thus, he did not sit on the jury that convicted the petitioner.

A thorough review of the trial transcript reveals that, outside of the presence of the full jury pool, potential juror Barbara Evans stated to the court and counsel, that, as the charges against the petitioner were being read in the initial instructions to the jury pool, another member of the jury pool, Shaun Tincher, muttered under his breath that the petitioner was guilty.  (ECF No. 18, Ex. 1, Vol. I at 43).  Ms. Evans was questioned about whether Mr. Tincher's comments would cause her to be biased either for or against the defendant, and Ms. Evans stated that she could be fair and judge the defendant solely on the evidence presented.  (*Id.* at 43-44).  A similar inquiry was made of potential juror Melvin Armstrong who was also sitting close to Mr. Tincher, and he

similarly indicated that he could judge the case solely on the evidence presented.  (*Id.* at 55).

Mr. Tincher was also questioned outside the presence of the jury pool[2], and he admitted that he believed that the petitioner was guilty and he did not believe he could fairly judge the petitioner based upon the evidence presented.  Accordingly, Mr. Tincher was struck for cause by the court and was not a member of the petitioner's jury.  (*Id.* at 52-53).

The trial transcript further reveals that juror Barbara Evans disclosed that Judge Hatcher had previously represented her husband some years before he went onto the bench.  (*Id.* at 40-42).  Ms. Evans was questioned about this relationship and indicated that the fact that the judge had previously represented her husband would not affect her ability to fairly judge the petitioner based upon the evidence presented during the trial. (*Id.*)  Ms. Evans was not stricken by either party and sat on the petitioner's jury.

The fourth member of the jury pool with which the petitioner takes issue is William Romine.  During voir dire, it was revealed that Judge Hatcher was aware that Mr. Romine possessed an old Army jeep and that the judge had performed Mr. Romine's wedding some years prior to the trial.  (*Id.* at 67-70).  Neither party moved to strike Mr. Romine for cause; nor did either party use a peremptory challenge to strike him.  Thus, Mr. Romine sat on the petitioner's trial jury and deliberated and arrived at a guilty verdict.

---

[2]  Mr. Tincher was individually questioned twice.  The first time, Mr. Mitchell addressed the fact that Mr. Tincher had been a witness in one of his prior trials and that Mr. Mitchell had potentially attempted to implicate Mr. Tincher in that crime.  Mr. Tincher stated that his prior experience would not affect his ability to judge this case.  Although Mr. Mitchell moved to strike Mr. Tincher for cause, Judge Hatcher denied that motion.  (ECF No. 18, Ex. 1, Vol. I at 26-29).  Mr. Tincher then remained in the jury pool until he was questioned again and admitted to a potential bias towards believing that the petitioner was guilty. At that time, he was struck for cause and did not participate in the petitioner's trial and guilty verdict.

In ruling on the petitioner's second state habeas petition, which focused on these alleged improprieties with the jury selection, Judge Hatcher made the following pertinent findings of fact:

6. Prospective juror, Ralph Marsico, was peremptorily challenged by counsel for the Inmate-Petitioner.

7. When the aforementioned juror's name was initially called to come forward the Court asked "Are you kin to Sam?" to which the juror replied "Yes, that's my brother."

8. During voir dire Mr. Marsico, who lived in the Valley District of Fayette County, West Virginia said that he knew Carl Harris, Fayette County Prosecuting Attorney, because they lived in the same general area of Fayette County.  Mr. Harris did not participate in the jury trial.

9. The Court did not know Mr. Marsico, but did know his brother, Sam Marsico, a very prominent business owner and operator in the Valley District of Fayette County.

10. Prospective juror Shaun Tincher was subsequently excused for cause by the Court because it was learned that he had made an inappropriate comment about the Defendant at the very beginning of jury selection.

11. The Court learned of Mr. Tincher's aforementioned inappropriate comment because prospective juror, Barbara Evans, told the Court about said improper comment.

12. The aforementioned juror Evans, who served as a trial juror, was the wife of a man who had been in and out of the criminal system in Fayette County for a number of years.  Her husband had been many, many years ago represented by the undersigned Judge when he practiced law.

13. Prospective juror William Romine, during individual voir dire, informed the Court that he had been, in the past, arrested by the Fayette County Sheriff's Department for driving under the influence of alcohol.

14. Also during the aforementioned individual voir dire, the undersigned Judge mentioned to the said prospective juror that he had performed his wedding.  The undersigned Judge also commented that he liked the military jeep the juror had restored.

15. Of the four (4) jurors aforementioned, only two (2) were seated as trial jurors.

16. At the time of the aforementioned jury trial, the undersigned Judge had been on the Bench approximately sixteen (16) years.

17. Prior to taking the Bench, the undersigned Judge served eight (8) years as an elected member of the West Virginia House of Delegates representing Fayette County.

18. The undersigned Judge practiced law in Fayette County, West Virginia for twenty (20) years prior to taking the Bench.

19. The undersigned Judge's parents owned and operated, for over a quarter century, a new car dealership and a self-service general store in Fayette County, West Virginia.

20. Thus, the undersigned Judge knows and is known by many, many people in Fayette County, West Virginia.

[21.] During a calendar year the undersigned Judge comes in contact with six (6) jury panels during three (3) terms of Court. During the process of numerous selections, the Judge becomes familiar with the background of many jurors, not to mention the fact that, being a life-long Fayette County resident, he knows the background and families of many jurors. Oftentimes there are jurors with whom the Judge attended elementary school and/or high school.

(ECF No. 18, Ex. 8 at 1-2). Judge Hatcher then made the following conclusions of law

concerning the jury selection:

4. The record in this case discloses that the trial jury was fairly, properly and lawfully selected.

5. The fact that a trial judge knows, and even acknowledges knowing some prospective jurors during jury selection does not disqualify said prospective jurors from serving fairly and impartially during the trial of any criminal defendant.

(*Id.* at 3).

The SCAWV affirmed these rulings, holding as follows:

With regard to jury selection, petitioner argues that he was prejudiced because one of the jurors was familiar with the prosecuting

17

attorney, because another juror made a disparaging comment about him, and because the judge had more than a casual acquaintance with a third juror.  The State argues in response that the juror who knew the prosecuting attorney only knew the elected prosecutor, not the assistant prosecuting assigned to petitioner's case, and the juror stated that he could remain unbiased.  Moreover, the State notes that the juror who made the disparaging comment was immediately stricken, and the comment was only overheard by one other juror.  Lastly, the State argues that there is no cause to disqualify a juror merely because he or she may have been friendly with, or know, the judge.

Petitioner has cited no case law in support of his contention that the circuit court erred in jury selection.  First, the juror who knew the elected prosecutor had no relationship with the attorney actually prosecuting the action and stated that he was unbiased.  Moreover there is no case law that states that when a juror is familiar with the judge that the juror is somehow disqualified from a trial.  Finally, the juror who made a disparaging comment about the petitioner was immediately stricken and the judge inquired as to whether another juror heard the comment.  We find no error in the circuit court's jury selection as complained of by petitioner.

(ECF No. 18, Ex. 7 at 2; ECF No. 28, Ex. 4 at 2).

A defendant is guaranteed a trial by an impartial jury under the Sixth and Fourteenth Amendments.  *See, e.g., Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due Process requires that the accused receive a trial by an impartial jury free from outside influence.").  "The essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel . . . ."  *United States v. Brown*, 799 F.2d 134, 135-36 (4th Cir. 1986).  Absent contrary indications, jurors are presumed to be impartial.  *Poynter v. Ratcliff*, 874 F.2d 219, 221 (4th Cir. 1989).  The defendant bears the burden of showing a strong possibility of juror bias.  *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987).  "The bias of a prospective juror may be actual or implied; that is it may be bias in fact, or bias conclusively presumed as [a]

matter of law." *Conway v. Polk,* 453 F.3d 567, 585 (4th Cir. 2006) citing *United States v. Wood*, 299 U.S. 123, 133 (1936). The *Conway* opinion states:

> The Court has explained that a juror's bias may be established by showing (1) that the juror "failed to answer honestly a material question on voir dire"; and (2) that a "correct response [to that question] would have provided a valid basis for a challenge for cause." *See McDonough Power Equip. Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed.2d 663 (1984)(the "*McDonough* test"). Additionally, a litigant must show that the fairness of his trial was affected either by the juror's "motives for concealing [the] information" or the "reasons that affect the juror's impartiality." *Id.*

453 F.3d at 585. (*Id.* at 22).

There is no evidence to suggest that anyone with any actual bias was seated on Petitioner's jury. Mr. Tincher was struck for cause and the petitioner used a peremptory challenge to strike Mr. Marsico. The Supreme Court has held that the failure to remove a juror for cause, with the result that the defendant had to use a peremptory challenge to remove the potential juror, does not violate the defendant's right to an impartial jury. *United States v. Martinez-Salazar*, 528 U.S. 304 (2000); *see also Ross v. Oklahoma*, 487 U.S. 81 (1988). Thus, the only jurors that are at issue with regard to this claim are Barbara Evans and William Romine, who both sat on the petitioner's jury.

Despite the fact that Ms. Evans and Mr. Romine both had prior associations with the judge, they both responded that they could fairly judge the petitioner's guilt based upon the evidence presented at the trial. Moreover, if the petitioner was still concerned about the impartiality of either of these jurors, he could have used his available peremptory challenges to strike these jurors as well. Thus, there is no evidence to support a finding that the petitioner was denied a fair and impartial jury, as alleged in Ground 6 of the petitioner's section 2254 petition.

Furthermore, under the standard addressed in greater detail below, because the plaintiff was not unduly prejudiced by the jury selection process, he is unable to demonstrate that his counsels' performance during the voir dire process was ineffective, as alleged in Grounds 1(c) and 2(c).

Based upon a thorough review of the trial transcript, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has not rebutted the factual findings of the state court, and he has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Grounds 1(c), 2(c) and 6 of the petitioner's section 2254 petition.

**B.     The petitioner's claims of ineffective assistance of counsel.**

The majority of the petitioner's claims in his section 2254 petition allege ineffective assistance of counsel by the petitioner's trial attorneys, John R. Mitchell, Sr., and William Murray.  Ground 1 of the section 2254 petition concerns the conduct of Mr. Murray, who represented the petitioner throughout his second jury trial.  Ground 2 of the petition concerns the conduct of Mr. Mitchell, who represented the petitioner during his first trial, which resulted in a mistrial, due to Mr. Mitchell's health issues, which also caused Mr. Mitchell to withdraw as trial counsel at the outset of the second trial.  The undersigned will first address the standards for reviewing ineffective assistance of counsel claims and will then address each claim in turn.

In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.  A defendant must show (1) that counsel's representation fell below an objective

20

standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing a trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, *id.* at 689, and the burden is on the petitioner to show prejudice. *Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983). Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. *See Strickland*, 466 U.S. at 693. Using this standard, the undersigned will address each of the petitioner's claims of ineffective assistance of counsel.

### *Alleged failure to move for continuance when petitioner failed to appear*

The petitioner has asserted that "Trial Counsel Murray did not make the proper motion's [sic] to continue the trial on the (second day) of trial, after Petitioner did not show up for trial, and he did not investigate the reason." (ECF No. 1 at 10). The respondent's Memorandum of Law in support of his Motion for Summary Judgment asserts that the trial record does not support this contention. (ECF No. 19 at 6).

The respondent's Memorandum of Law asserts that Mr. Murray did seek a continuance when the petitioner failed to appear for the second day of trial.  (*Id.*) However, the trial court only permitted a one hour continuance.  (*Id.*)  When Mr. Murray asked for an additional continuance, the court denied the same.  As noted by the respondent in his Memorandum of Law, counsel cannot force a court to grant a continuance, and counsel cannot be found to be ineffective simply because the court overruled his request.  *See, e.g., Bennett v. United States*, No. 1:10cv88, 2011 WL 2909238 (N.D. W. Va. Jul. 18, 2011) ("Counsel is not ineffective merely because the court overruled his objection.").  (ECF No. 19 at 7).

The petitioner appears to concede this issue in his Response, at least to the extent that he admits that Mr. Murray made an oral request for a continuance, but not a written motion.  (ECF No. 24 at 4).

The undersigned proposes that the presiding District Judge **FIND** that Mr. Murray did make two oral motions for a continuance when the petitioner failed to appear for the second day of trial.  However, in accordance with Rule 43 of the West Virginia Rules of Criminal Procedure, the trial court overruled the motions for a continuance, and moved forward with the trial in the petitioner's absence.  The undersigned further proposes that the petitioner has not demonstrated that Mr. Murray could have taken any additional steps to obtain a continuance of the trial, and that the petitioner cannot demonstrate that Mr. Murray's conduct fell below an objective standard of reasonableness under the circumstances.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has failed to demonstrate ineffective assistance of counsel sufficient to warrant habeas corpus relief on this basis.  The undersigned further

22

proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this ground were neither contrary to, nor an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 1(a) of the petitioner's section 2254 petition.

### *The petitioner's competency issues*

On a related note, the petitioner has asserted that both Mr. Mitchell and Mr. Murray provided ineffective assistance because they failed to request that the petitioner undergo a mental health evaluation to determine whether he was competent to stand trial. (ECF No. 1 at 10, 14). In his petition, the petitioner asserts that, "after the first day of trial, while out on bond, he became depressed, and before he knew it, he did not know what day it was, and he had missed the second day of trial." (*Id.* at 10). In Ground 1 (d), concerning the conduct of Mr. Murray, the petitioner further asserts:

> Trial Counsel did not move for a mental evaluation after learning that the Petitioner went through a mental breakdown. The Petitioner was still confused, did not have sufficient ability to consult with his counsel. He did not have any understanding of the Court proceeding and the fact that the Petitioner was tried while he was mentally ill.

(*Id.*) In Ground 2(a), the petitioner repeats a blanket allegation concerning Mr. Mitchell's failure to have him undergo a mental health evaluation. (*Id.* at 14).

In Ground 3 of his section 2254 petition, the petitioner asserts that he was denied a fair trial because he was incompetent to stand trial. He specifically states:

> Petitioner was denied a full and fair trial when he was forced to stand trial on August 8, 2006[3], while he was having a mental breakdown. As the first day of trial was over, the Petitioner's condition progressed to where he was

---

[3]   The undersigned notes that the petitioner cites the date of his first trial in this paragraph, not the second trial, which took place on January 22-23, 2007. The court is unaware of any evidence that the petitioner failed to appear at his first trial. The undersigned believes this to be a typographical error.

depressed, confused, and loss [sic; lost] complete awareness, which caused the Petitioner to miss the second day of trial.

(*Id.* at 17).     The respondent's Memorandum of Law in support of his Motion for

Summary Judgment addresses the petitioner's competency claims as follows:

> The West Virginia Supreme Court of Appeals found there was no evidence the Petitioner was mentally incompetent to stand trial.  Indeed, the state habeas judge, who presided over the Petitioner's criminal trial, found in the State order denying habeas relief, "the Petitioner always appeared alert, responsive and well aware of his surroundings and the important criminal proceedings."  Resp't Ex. 8.  "[T]he judge presiding on post conviction review was ideally situated to make this assessment because she is the same judge who sentenced [the Petitioner] and discussed these issues with him."  *Schriro v. Landrigan*, 550 U.S. 465, 476 (2007).  "Based on the lack of evidence that the petitioner was incompetent to stand trial, his attorney's failure to request a competency hearing . . . did not fall outside the wide range of professionally competent assistance.  Counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel."  *Contreras v. Rice*, 5 F. Supp.2d 854, 867 (C.D. Cal. 1998).

(ECF No. 19 at 8-9).

The petitioner's Response asserts that he cannot meet the high standard to demonstrate that he was not competent to stand trial because the state habeas court denied him a reasonable opportunity to develop any evidence in an evidentiary hearing. (ECF No. 24 at 1).  His Response further asserts that he had a history of mental health issues, which should have prompted his counsel to request to have him evaluated.  (*Id.* at 5).

Although the petitioner was not granted an evidentiary hearing in the state court, his petition does not sufficiently allege facts that would warrant such a hearing.  The petitioner conclusively asserts that he had a history of mental health issues, and that he had a "mental breakdown" before the second day of trial.  He has not proffered any specific evidence that he would have presented in an evidentiary hearing to support

these contentions, which would in any way support a finding that the petitioner was tried while mentally incompetent.  Furthermore, as noted by the respondent, such "conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel."  *United States v. Hawkins*, ____ Fed. Appx. ____, 2013 WL 3242769, at *2 (4th Cir. 2013) (quoting *United States v. Demik*, 489 F.3d 644 (5th Cir. 2007) (alterations omitted).  (ECF No. 19 at 5).

In the petitioner's first habeas matter, Judge Hatcher, who presided over all of the petitioner's criminal proceedings as well, found that the petitioner never raised any issues concerning his competency.  The Order made the following findings:

> The Court presided in every proceeding in the Petitioner's underlying case, from arraignment through two jury trials and sentencing, and with the knowledge and experience gained through presiding in all of the aforementioned, this Court has carefully read and considered the Petitioner's request for post-conviction relief as set forth in the entire contents of the above-styled case file.

> At no time during the Petitioner's underlying criminal case did he or any of his counsel ever raise the issue of the Petitioner's mental competency, and the Petitioner always appeared to be alert, responsive and well aware of his surroundings and the important criminal proceedings.

> During the second trial (the first trial was a mistrial) in which the Petitioner was convicted of six felony sex crimes, he failed to appear for the second and final day of said jury trial.  The trial was delayed for a time and then proceeded without the Petitioner.  The Petitioner was subsequently apprehended by United States Marshals somewhere in Southern West Virginia.  Subsequent to the aforementioned arrest, and further appearances in Court, including sentencing, the Petitioner never raised any issues concerning his competency to proceed in the underlying criminal case.

> Throughout the Petitioner's jury trials and sentencing, he was, in the Court's opinion, fairly and effectively represented by effective trial counsel.

> The sentences imposed by the Court were, under the law and facts of the case, then and now lawful and appropriate sentences.

The Circuit Court further noted that "the evidence at trial was clearly sufficient for the jury to find the Petitioner guilty beyond a reasonable doubt."  (ECF No. 29, Ex. 2 at 2). The SCAWV affirmed this ruling in the petitioner's first habeas appeal.

Moreover, in his second habeas appeal, the SCAWV made the specific finding that:

> Petitioner has produced no evidence that he was or is suffering from a mental deficiency.  As to the petitioner's absence from trial, Rule 43 of the West Virginia Rules of Criminal Procedure states specifically that a trial may continue if the defendant has voluntarily absented himself from the trial.  Thus, counsel had no basis on which to move for a mistrial.

(ECF No. 18, Ex. 7 at 2; ECF No. 28, Ex. 4 at 2).

A state court's determination that a defendant was competent to stand trial is a factual finding that is entitled to the presumption of correctness under section 2254 (e)(1).  *See Maggio v. Fulford*, 462 U.S. 111, 117 (1983).   The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not presented clear and convincing evidence to overcome the state courts' finding that he was competent to stand trial.   Nor has the petitioner demonstrated that his counsel was ineffective in failing to move for a competency evaluation.  The undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Grounds 1(d), 2(a) and 3 of the petitioner's section 2254 petition.

### *Failure to present evidence of actual innocence and move for dismissal of indictment*

The petitioner asserts that his counsel failed to develop evidence which would have shown that he was working in another state during the time period that the alleged

victim claimed this sexual abuse occurred.  In Ground 1(b) of his federal petition, the petitioner asserts that "[t]he first day of trial, [the petitioner] observed his Counsel had not obtained records that supported his actual innocence.  (ECF No. 1 at 10).  In Ground 1(h), he elaborates on this claim, stating:

> Petitioner's trial counsel did not make a Motion concerning the Grand Jury Indictment for September 2004 when the alleged victim told the court during her testimony in August of 2006, her birthday was August 21. Trial Counsel had in their file the Petitioner's work records that showed during the time of the alleged assault, the [petitioner] was working in another State during that period of time.  Trial Counsel did not take any action to have the alleged charged [sic; charges] dismissed, and he allowed the case to go forward and in doing such, the Petitioner was found guilty of teh [sic: the] charge when he was actually innocent.

(*Id.* at 11).  He repeats a similar allegation in Grounds 2(e), asserting that Mr. Mitchell "failed to research the Grand Jury Indictment's [sic] which one of the alleged victim, to who alleged she was or had sexual contact with the Petitioner, in fact lied as she gave the month, or months it allegedly occurred.  Counsel Mitchell knew or should have known during this period of time, the Petitioner was working in another state." (*Id.* at 15).  In Grounds 2(f) and 2(g), the petitioner further asserts that Mr. Mitchell failed to obtain the transcripts and notes of the grand jury and failed to file proper motions to have the case dismissed.  (*Id.*)  He fails to further elaborate on these assertions.

The respondent's Memorandum of Law in support of his Motion for Summary Judgment contends that, to the extent that these claims are asserting that the petitioner had an alibi for the time period in which the alleged victim contends this abuse took place, such evidence is insufficient to warrant dismissal of the indictment but, rather, presents a question of fact that should have been determined by the jury.  The Memorandum of Law states in pertinent part:

> The petitioner claims that his counsel was ineffective in failing to move to dismiss the indictment based upon the fact that he had an alibi. (Fed. Ha. Pet. Page # 6 Ground 1, Page #8 Ground 2).
>
> In West Virginia, alibi is a defense to a criminal charge and is a question of fact for jury determination.  *See, e.g., State v. Knotts*, 197 S.E.2d 93, 95 (W. Va. 1973); *State v. Withrow*, 96 S.E.2d 913, 922 (W. Va. 1957).  Had the Petitioner's counsel moved to dismiss the indictment on the ground that he had evidence to dispute the charge, the trial court would have denied the motion, since it was a jury question and not a question for the court.

(ECF No. 19 at 10).  The respondent further asserts that the petitioner has not identified any specific records or how they support his innocence.  Thus, the respondent asserts that the petitioner "has not alleged any facts to demonstrate that [his] attorney's representation fell below 'an objective standard of reasonableness,' or that [he] was prejudiced as a result." (*Id.* at 7).  Accordingly, the respondent asserts that this claim of ineffective assistance of counsel fails as a matter of law.  (*Id.*)

The petitioner's Response contends that he spoke to Mr. Murray twice at his office and informed Mr. Murray that he needed to obtain the petitioner's work records "which would show at the time or times the alleged assault took place, the Petitioner was at work." (ECF No. 24 at 4).  The Response further states:

> The alleged assault took place in October 2004[4], when the records show the Petitioner was working.  These records would have supported the alleged victim had a learning disability [and?] was told or coached by her mother to lie on the Petitioner.

---

[4]  In suggesting that the alleged abuse took place in October of 2004, the petitioner appears to be relying upon a one-page summary medical report dated March 28, 2005, authored by Dr. Sharon Istfan, who works in the sexual assault clinic at CAMC Women and & Children's Hospital in Charleston, West Virginia.  Dr. Istfan's summary states that "per [the victim's] mom" the abuse "apparently occurred in October of 2004." (ECF No. 24, Appx. 1).  At the second trial, S.H. was not specifically questioned about a date or time period in which the alleged abuse occurred.  Her mother, Alesha Hiat, testified that the last time her daughter saw the petitioner was in August or September of 2004, which is consistent with the indictment.  Another witness, social worker Lucy Earl, testified that S.H. told her this occurred in the summertime because it was hot and she was wearing shorts.  Thus, other than the reference in the medical report, there is no evidence or suggestion that the alleged abuse took place in October of 2004.

> The alleged victim's mother also stated this has happen[ed] in the past.  Everything that was alleged was proved false by the medical records and other reports.  (See Appendix # 1)
>
> At trial, [S.H.] alleged victim again changes her testimony that it occurred before her birthday, August 21, 2004.  This was another false statement as the Petitioner was not around.
>
> It is clear attorney Murray should have obtained these records that could have impeached the testimony of the alleged victim.

(*Id.*)

Although the indictment is not a part of the record before this court, excerpts of the trial transcript indicate that the indictment states that this alleged abuse occurred "in or near September of 2004."  (ECF No. 18, Ex. 1, Vol. I at 230).  The petitioner has attached some computerized records to his Response which are purported to be "work records" showing that he was working out of state throughout the months of August and September of 2004.[5]  (ECF No. 24, Appx. 3).  However, the petitioner offers no explanation of what the numerous abbreviations and codes in these records mean. Moreover, despite the fact that the petitioner raised this claim of ineffective assistance of counsel and it was adjudicated in his first state habeas petition (ECF No. 28, Ex. 1), it does not appear that these computerized records were made a part of the state court record.

Pursuant to the Supreme Court's ruling in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), when reviewing a claim that was adjudicated on the merits in the state court, this federal court is limited to review of the record that was before the state courts.  *See also* 28 U.S.C. § 2254(d).  Furthermore, to the extent that the petitioner failed to develop the factual basis for this claim in the state courts, he cannot meet the exceptions under 28

---

[5]  From the undersigned's review, these records do not appear to contain any information about the petitioner's work schedule in October of 2004.

U.S.C. § 2254(e)(2) to further develop the facts herein, as he has not shown by clear and convincing evidence that, but for the alleged ineffective assistance of his counsel, no reasonable factfinder would have found him guilty beyond a reasonable doubt.

Similarly, the petitioner has not produced any specific evidence in the way of grand jury notes or transcripts that would demonstrate that, but for his counsel's failure to obtain and use those records at trial, he would not have been convicted.  As noted by the respondent, the records discussed by the petitioner would not have been a sufficient basis to dismiss the indictment against the petitioner.  He may only have been able to attempt to use them as impeachment evidence.

As noted previously, Judge Hatcher found that there was sufficient evidence to support a finding of the petitioner's guilt beyond a reasonable doubt and that the petitioner's counsels' representation was fair and effective.  (ECF No. 29, Ex. 2).  The SCAWV saw no error in these findings.  (ECF No. 28, Ex. 2).  The petitioner has not presented alibi or other evidence that would call into question the jury's verdict, nor has he demonstrated that, but for his counsel's failure to present this alleged evidence, he would not have been found guilty.

The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his counsel's conduct fell below an objective standard of reasonableness or that he was unduly prejudiced thereby.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Grounds 1(b), 1(h), 2(e), 2(f) and 2(g) of the petitioner's section 2254 petition.

*Failure to call witnesses*

In Ground 1(e) of his federal petition, the petitioner alleges that Mr. Murray was ineffective because he did not call witnesses whose testimony would have "cleared the Petitioner of the alleged charges." (ECF No. 1 at 10). The petition does not identify any of these alleged witnesses, or in any way state what their alleged testimony would have been.

In his Memorandum of Law in support of his Motion for Summary Judgment, the respondent cites to a recent decision by another judge of this court denying a claim of ineffective assistance of counsel where the petitioner failed to identify the witnesses or allegedly favorable evidence that was not presented at trial. The Memorandum states:

> [The Petitioner] does not indicate what witnesses should have been interviewed, what information an interview would have revealed, or how such an "interview of obvious defense witnesses" would have made a difference in the District Court proceedings. *See Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (an allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out). [The Petitioner], therefore, fails to meet the *Strickland* two prong standard.

*Cook v. United States*, No. 1:10-cv-0840, 2012 WL 7998063, at *6 (S.D. W. Va. Oct. 6, 2012) (VanDervort, Mag. J.), *report and recommendation adopted*, 2013 WL 1827766 (S.D. W. Va. Apr. 30, 2013). (ECF No. 19 at 9). The respondent asserts that the instant claim for ineffective assistance of counsel should be denied or dismissed for similar reasons. (*Id.*)

The petitioner elaborates on this claim in his Response, which states:

> Trial Counsel did not call the Petitioner[']s supervisor to show he was in Columbus, Ohio during the time the alleged acts occurred.

> Trial Counsel could have obtained medical records and testimony from those who tested the alleged victim which showed nothing occurred.

31

> Petitioner's trial counsel could have called other members of the alleged victim's kin, that was [sic; who were] also accused of the same acts. The alleged victim, because of her diminished capacity, had a history of accusing others when she was in a certain mood, or did not get her way, this was an attention tactic.
>
> During the Petitioner's first trial, witnesses Donald Turner, Jeremy Brown, Peggy Ward, Curtis Ward, Jeremy Ward, Trv;a [sic; insert name] McClure, Tammy Ward, Misty McClure all were to be called and they would have supported the Petitioner's innocence.

(ECF No. 24 at 5-6).  The petitioner again asserts that he was not allowed to develop the record and have these witnesses testify in an evidentiary hearing.  (*Id.*)

The failure to call witnesses is a tactical decision which generally does not amount to ineffective assistance of counsel.  *See Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977).  Furthermore, ineffective assistance is not shown where witnesses who were not called to testify would not have helped the defense.  *See Jones v. Taylor*, 547 F.2d 808, 810-811 (4th Cir. 1977).  The petitioner merely speculates that testimony of the named witnesses that were not called by his counsel as defense witnesses would have changed the outcome of his trial.  Based upon a review of the entire record, the undersigned proposes that the presiding District Judge **FIND** that the decision of the petitioner's counsel not to call certain witnesses at trial was a matter of trial strategy, and that the decision was objectively reasonable under the totality of the circumstances.

It is also well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  The petitioner has not shown that his counsel's choices were anything other than trial strategy; nor has he demonstrated that his counsels' conduct fell below an objective standard of reasonableness.

32

Judge Hatcher found that there was sufficient evidence to support a finding of the petitioner's guilt beyond a reasonable doubt and that the petitioner's counsels' representation was fair and effective.  (ECF No. 29, Ex. 2).  The SCAWV saw no error in these findings.  (ECF No. 28, Ex. 2).  Although the SCAWV did not specifically address this issue, the Court affirmed Judge Hatcher's decision, holding that "[t]hroughout the Petitioner's jury trials and sentencing he was, in the Court's opinion fairly and effectively represented by effective trial counsel.  (ECF No. 28, Ex. 2 at 2).

The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his counsel's conduct fell below an objective standard of reasonableness or that he was unduly prejudiced thereby.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 1(e) of the petitioner's section 2254 petition.

<em><u>Failure to obtain the victim's medical records</u></em>

In Ground 1(f) of his federal petition, the petitioner alleges that Mr. Murray provided ineffective assistance because he failed to obtain medical records which would have showed that the alleged victim, S.H., was lying about being abused.  (ECF No. 1 at 10).  However, as noted by the respondent in his Memorandum of Law in support of his Motion for Summary Judgment, the petition does no identify these records or in any way discuss how they would demonstrate that S.H. had not been sexually assaulted or abused as she described in her trial testimony.  (ECF No. 19 at 9).  Accordingly, the respondent asserts that this ground for relief should be summarily dismissed because

33

this conclusory evidence fails to demonstrate that the petitioner is entitled to habeas corpus relief.  (*Id.*)

The petitioner's Response repeats his conclusory allegation that S.H.'s medical records would support the fact that she was not a victim of sexual assault or abuse, and that his counsel failed to obtain and introduce those records.  (ECF No. 24 at 3).  The Response further asserts that "[t]he alleged victim was interviewed by the doctors, counselors all of which testing showed their [sic; there] was not injuries that would have been had the Petitioner assaulted the alleged victim in the manner she told the jury and others."  (*Id.* at 6).  The petitioner's Response provides one medical record consisting of a summary report by Dr. Sharon Istfan, who works in CAMC Women & Children's Hospital's Sexual Assault Clinic.  The report, dated March 28, 2005, states in pertinent part that S.H.'s physical examination was "all within normal limits."  (ECF No. 24, Appx. 1).  The report further states that testing for Chlamydia was negative.  (*Id.*)  The petitioner appears to rely upon these statements and the absence of affirmative evidence of sexual assault or abuse therein to support his contention that the alleged victim was lying.

However, the end of the report further states, "This, however, does not preclude the possibility of prior sexual abuse."  (*Id.*)  This examination occurred approximately eight months after the time period in which the alleged abuse occurred.  Furthermore, it is not uncommon for there to be no physical evidence of sexual abuse or assault particularly under circumstances such as those alleged by S.H. that did not involve penile penetration.  Moreover, the uncorroborated testimony of a single victim alone is sufficient to sustain a verdict.  *See, e.g., United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997).

Again, notwithstanding the fact that the petitioner did not have an evidentiary hearing in the state court, the petitioner has the burden to demonstrate the factual bases for his claims for habeas corpus relief.  Pursuant to section 2254(e)(2), the petitioner has not produced records that would demonstrate by clear and convincing evidence that the alleged victim was lying, or any other evidence that would support his claim of actual innocence.

Judge Hatcher found that there was sufficient evidence to support a finding of the petitioner's guilt beyond a reasonable doubt and that the petitioner's counsels' representation was fair and effective.  (ECF No. 29, Ex. 2).  The SCAWV saw no error in these findings.  (ECF No. 28, Ex. 2).  Although the SCAWV did not specifically address this issue, the Court affirmed Judge Hatcher's decision, holding that "[t]hroughout the Petitioner's jury trials and sentencing he was, in the Court's opinion fairly and effectively represented by effective trial counsel.

The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his counsels' conduct fell below an objective standard of reasonableness or that he was unduly prejudiced thereby.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 1(f) of the petitioner's section 2254 petition.

### *Rule 404(b) evidence*

In Ground 1(g) of his federal petition, the petitioner alleges that his trial counsel provided ineffective assistance because counsel failed to file the proper motions or to

otherwise attempt to exclude the admission of evidence of other crimes, wrongs or bad acts by the petitioner.  (ECF No. 1 at 11).  Although the petitioner's petition does not specify what evidence his counsel should have moved to exclude, a review of the trial transcript reveals that the trial court permitted the State to present testimony from two other family members who claimed that the petitioner engaged in sexual assault and abuse of them when they were pre-teens and teenagers.  After the testimony of each of these witnesses, the trial court gave an instruction concerning the limited use of this evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence.

The respondent's Memorandum of Law in support of his Motion for Summary Judgment emphasizes that the petitioner did not identify the allegedly objectionable evidence or the grounds upon which objection could have been successfully made.  (ECF No. 19 at 9-10).  The respondent further asserts that "[b]ecause the decision not to object to 404(b) evidence is within the realm of sound trial tactics or strategy . . . 'the failure to object, without more, is insufficient to sustain a claim of ineffective assistance of counsel.'"  *Buchanan v. United States*, 2011 WL 4832565, at *5 (D.S.D. Oct. 12, 2011); *Hart v. United States*, 2011 WL 2199948, at **5-6 (E.D. Mo. Jun. 7, 2011); *Burney v. Warden*, 2010 WL 2629886, at *18 (S.D. Ohio Jul. 29, 2010).  (*Id.* at 10).

The petitioner's Response does not elaborate on this claim.  He merely states that the fact that his counsel did not file a "404(b) petition" can only be developed in a full hearing.  (ECF No. 24).

It is not the province of this court to revisit the state court's determination of whether the evidence in question was admissible under Rule 404(b) or whether such a determination was even required.  Rather, this court is limited to determining whether the petitioner's counsel's failure to move to exclude or otherwise challenge the

admission of such evidence fell below an objective standard of reasonableness, and was unduly prejudicial to the petitioner's case.

As previously noted, Judge Hatcher found that there was sufficient evidence to support a finding of the petitioner's guilt beyond a reasonable doubt and that the petitioner's counsels' representation was fair and effective.  (ECF No. 29, Ex. 2).  The SCAWV saw no error in these findings.  (ECF No. 28, Ex. 2).  The SCAWV affirmed the denial of the petitioner's first habeas petition, finding that "[t]hroughout the petitioner's jury trials and sentencing, he was, in the Court's opinion, fairly and effectively represented by effective trial counsel."  (ECF No. 28, Ex. 2 at 2).

In the petitioner's second habeas proceedings, Judge Hatcher made the following conclusion of law:   "Applying an objective standard, in light of all of the facts and circumstances, the identified acts and omissions by trial counsel were not outside the broad range of professionally competent assistance, and clearly a reasonable lawyer would have acted, under the same facts and circumstances, as did defense counsel in the Inmate-Petitioner's case."  (ECF No. 18, Ex. 8 at 3).  The SCAWV again affirmed that ruling.  (ECF No. 18, Ex. 7 at 2; ECF No. 28, Ex. 4 at 2).

The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his counsels' conduct fell below an objective standard of reasonableness or that he was unduly prejudiced thereby.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 1(g) of the petitioner's section 2254 petition.

### *Mr. Mitchell failed to move for dismissal of certain counts after mistrial*

In Ground 2(b) of his federal petition, the petitioner asserts that, after the court granted a mistrial in the petitioner's first trial, Mr. Mitchell knew that the State had no evidence to support some of the charges against him, and that "the Court was going to dismiss several charges." (ECF No. 1 at 14). Thus, the petitioner claims that Mr. Mitchell provided ineffective assistance because he failed to move to dismiss those charges before the petitioner's second trial. (*Id.*) The respondent did not specifically address this claim in his Memorandum of Law.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. *Id.* at 693.

The petitioner has not identified the charges he claims should have been dismissed for lack of sufficient evidence, nor is the record of the petitioner's first trial part of the record before this court. Thus, this court is unaware of what, if any testimony and evidence was presented in the first trial, and cannot make any determination based upon that record. Therefore, the petitioner has not specifically demonstrated that his counsel's conduct in failing to move to dismiss any of the charges in the indictment fell below an objective standard of reasonableness, or that the petitioner was unduly prejudiced by counsel's performance. This argument is also unfounded as, in the second trial, the State presented evidence that the jury found,

beyond a reasonable doubt, supported the petitioner's guilt on all six counts in the indictment.

The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his counsels' conduct fell below an objective standard of reasonableness or that he was unduly prejudiced thereby.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 2(b) of the petitioner's section 2254 petition.

### *Mr. Mitchell's failure to step down earlier in case*

In Ground 2(d), the petitioner asserts that Mr. Mitchell was ineffective because he should have stepped down from representation of the petitioner earlier in the case in order to allow Mr. Murray time to properly investigate the case and prepare for trial. (ECF No. 1 at 14).   However, as noted by the respondent, the petitioner does not specifically assert how Mr. Murray was allegedly ineffective as a result of the timing of Mr. Mitchell's withdrawal as counsel.  Rather, the petitioner merely makes a conclusory statement that Mr. Murray needed more time to prepare.  As further noted by the respondent in his Memorandum of Law:

> Absent a showing second counsel was ineffective under the specific facts of the case, the Petitioner cannot mete out a claim of ineffective assistance of counsel.  [*Glover v. Miro*, 262 F.3d 268, 279 (4th Cir. 2001)].  ("Courts should not presume prejudice where the facts show otherwise, and *Strickland* has the bedrock virtue of looking at prejudice to the defendant in *each* case.").  *See Young v. Duckworth*, 733 F.2d 482, 483-84 (7th Cir. 1984) ("[I]t does not follow that every lapse in representation, however brief and inconsequential, deprives a criminal defendant of his rights under the Sixth Amendment.  If the lapse (though always regrettable) does

not prejudice the defendant in defending himself against the criminal charge, it does not justify nullifying his conviction.")

(ECF No. 19 at 11).

The petitioner's Response asserts that Mr. Mitchell had prepared the case for the first trial and had the knowledge of what needed to be done, and when Mr. Murray was called upon to become lead counsel on the first day of the second trial, he was not prepared, as evidenced by not calling witnesses, or obtaining evidence that would have supported the petitioner's innocence. (ECF No. 24 at 7).

According to Appendix 2 attached to the petitioner's Response (ECF No. 24, Appx. 2), which is an excerpt from a pre-trial hearing that occurred on September 22, 2006, after the mistrial in the petitioner's first trial, Mr. Mitchell indicated that Mr. Murray would be joining his practice on October 16, 2006. (*Id.* at 3-4). Although, at that time, Mr. Mitchell further indicated that Mr. Murray would likely sit second chair at the petitioner's trial, this record indicates that Mr. Murray would have been involved in preparation of the petitioner's case for at least three months prior to the second trial. Thus, the petitioner's conclusory allegation that Mr. Mitchell's abrupt withdrawal from the case left Mr. Murray no time to prepare and investigate the case rings hollow.

The petitioner has failed to specify particular unreasonable acts or omissions attributable to Mr. Murray as a result of the withdrawal by Mr. Mitchell that do not bootstrap claims of ineffective assistance of counsel which have already been found to be meritless.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has failed to demonstrate ineffective assistance of counsel based upon Mr. Mitchell's decision to withdraw as counsel at the beginning of the petitioner's

second trial.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 2(d) of the petitioner's section 2254 petition.

<em>Ineffective assistance of appellate counsel</em>

In Ground 5 of his federal petition, the petitioner asserts that his appellate counsel, Gina M. Stanley, was ineffective because she failed to properly present or develop the six grounds for relief that were raised in the Petition for Appeal. Specifically, the federal petition asserts as follows:

> Appellate counsel was ineffective for not presenting the documents and having a full oral as well as written review of her Appeal issues. Appellate counsel even assigned Ineffective Assistance of Trial Counsel without developing the issue before the Circuit Court. Petitioner's rights to a Direct Appeal (Review) was violated because of Appellate Counsel failed to develop all the facts and the records for a full and fair review before the State Supreme Court.  Appellant Counsel was ineffective when she failed to Appeal and develop the record that Grand Jury Indictment that the Petitioner alleged the crime in September 2004, and during that period of time, Petitioner was in another state working which made it impossable [sic; impossible] for the commiting [sic; committing] the alleged acts in which he was convicted for.

(ECF No. 1 at 21).

The respondent's Memorandum of Law correctly contends that the standard of ineffective assistance of appellate counsel is generally the same as that for trial counsel, using the *Strickland* standard.  *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000); *Evitts v. Lucy*, 469 U.S. 387 (1985).  The respondent's Memorandum of Law further asserts:

> [A]t the time of the original appeal, West Virginia had a discretionary appeal system – a Petitioner was not automatically guaranteed an appeal, only the opportunity to present a petition for appeal.  *Billotti v. Legursky*,

41

975 F.2d 113, 115 (4th Cir. 1992).  The decision to grant an appeal rested with the Court not counsel.  *Howard v. Ballard*, No. 5:08CV112, 2009 WL 1872970 at \*4 (N.D. W. Va. June 29, 2009) ("In West Virginia, whether an appeal is granted is within the discretion of the West Virginia Supreme Court of Appeals.")

> Furthermore, while it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on direct appeal, showing counsel was incompetent for failing to do so will be difficult.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  Appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal."  *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993).  The Petitioner claims counsel on appeal did not assert the Petitioner had an alibi as shown by his work records.  However, this was a jury question and appellate courts will not second guess jury findings.  Appellate counsel have no duty to raise every non-frivolous claim, *Jones v. Barnes*, 463 U.S. 745, 751 (1983), much less to raise (as the issue here was) a frivolous claim.

(ECF No. 19 at 11-12).

> The petitioner's Response to the Motion for Summary Judgment states:

> Petitioner was denied effective representation on appellate counsel which there were issues that should have been brought before the Supreme Court, however, because the Petitioner has been denied the chance to develop these issues on the Circuit Court level, the Respondent is taking advantage of the *Strickland v. Washington, supra*, standard to seek dismissal of the Petitioner's case, when in fact the Court should at best give the Petitioner a chance to develop his case before the case as he has a right to one full habeas corpus hearing to develop his case, and because of his mental disability, he is unable to present the case by pro-se in a manner that he could obtain further evidence in the case.

(ECF No. 24 at 7).

In his first habeas proceeding in the state court, Judge Hatcher found that "the mere allegation that appellate counsel was ineffective basically because appellate counsel was unsuccessful in the appellate process is without merit."  (ECF No. 29, Ex. 2 at 2).  The SCAWV found no error in Judge Hatcher's findings and affirmed the denial of the petitioner's habeas petition.

As noted by the respondent, defense counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745 (1983). The petitioner has not specified what particular issues he believes his appellate counsel should have developed in his direct appeal, or that the petitioner ever requested that additional claims be raised which were not raised by Ms. Stanley. In *Jones*, the Supreme Court stated:

> This Court, in holding that a State must provide counsel for an indigent appellant on his first appeal as of right, recognized the superior ability of trained counsel in the "examination into the record, research of the law, and marshalling of arguments on [the appellant's] behalf," *Douglas v. California*, 372 U.S. [353] at 358, 83 S. Ct. [814] at 817 [(1963)].

463 U.S. at 751.

The undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his appellate counsel's conduct fell below an objective standard of reasonableness or that he was unduly prejudiced thereby. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that the state courts' decisions denying the petitioner habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, and that the respondent is entitled to judgment as a matter of law on Ground 5 of the petitioner's section 2254 petition.

## C.    The petitioner's claim that his sentence was excessive.

In Ground 4 of his federal petition, the petitioner contends that his sentences, which amounted to a total of 55 to 130 years in prison is equivalent to a life sentence and that he will not be eligible to see the parole board until he is 109 years old. (ECF No. 1 at 19). The petitioner contends that his sentences violate the sentence proportionality rule

required by the Eighth Amendment guarantee against cruel and unusual punishment. (*Id.*)

The Respondent's Memorandum of Law in support of his Motion for Summary Judgment contends that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Ewing v. California*, 538 U.S. 11, 20, 23 (2003) (citation omitted). (ECF No. 19 at 12). The respondent further emphasizes that, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 21. As noted by the respondent, if a "threshold comparison of the crime committed and the sentence imposed" does not reveal a gross disproportionality, the inquiry ends. *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring)). (ECF No. 19 at 13).

Addressing the petitioner's sentences, the respondent's Memorandum of Law asserts:

> Here, the Petitioner was convicted of two counts of first degree sexual abuse, two counts of incest, and two counts of sexual abuse by a guardian or custodian. Resp't Ex. 7 at 1. These are serious offenses to the child and to society. "Sexual molestation of a child is a very serious offense . . . . The impact of these crimes on the lives of the victims is extraordinarily severe." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994). *See also United States v. Vigil*, 334 F.3d 1215, 1222 (10th Cir. 2003) (quoting *United States v. Martinez-Carillo*, 250 F.3d 1101, 1106 (7th Cir. 2001)) ("'incest presents an aggravating factor that evokes a serious potential risk of physical injury.'").
>
> Further, such dangers are not limited just to child victims. "The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). "Sex offenders are a serious threat in this Nation." *McKune v. Lile*, 536 U.S. 24, 32 (2002)(plurality opinion). The harm caused by the Petitioner warrants severe sanctions. "The harshness of [the Petitioner's] penalty reflects the gravity of his crimes." *United States v. Wellman*, 663 F.3d 224, 232 (4th Cir. 2011). The Petitioner has failed to

show his sentence is grossly disproportionate.  *Cf. Harmelin v. Michigan*,
501 U.S. 957, 995 (1991) (affirming life sentence without the possibility of
parole for firs-time offender possessing 672 grams of cocaine).

(*Id.*)

The petitioner's Response contends that his total sentence term of 55-130 years is

a life sentence for him, which was based upon perjured testimony and a faulty

investigation by his counsel.  (ECF No. 24 at 7).  The petitioner's Response further states

that:

> The evidence does not warrant a violation of the Eighth Amendment of
> cruel and unusual punishment.  Where the evidence show[s] the Petitioner
> no prior history of sexual assault, his work records and service to others,
> and the lack of evidence all support that the Petitioner's sentence is in
> direct violation of the United States constitution.

(*Id.*)

As noted by the respondent, the Eighth Amendment provides a narrow

proportionality guarantee in non-capital cases, which forbids only "extreme sentences"

that are "grossly disproportionate" to the crime.  *Harmelin v. Michigan*, 501 U.S. 957,

996-997, 1001 (1991).  In a badly-splintered plurality opinion, the Court restricted

proportionality review to the "rare case in which a threshold comparison of the crime

committed and the sentence imposed leads to an inference of gross disproportionality."

*Id.* at 1005.

Justice Kennedy, concurring in the opinion, identified four "principles of

proportionality review" which were common to the Court's jurisprudence:  (1) the

primacy of the legislature; (2) the variety of legitimate penological schemes; (3) the

nature of our federal system; and (4) the requirement that proportionality review be

guided by objective factors.  *Id.* at 998-1001.

In *Ewing v. California*, 123 S. Ct. 1179 (2003), the United States Supreme Court again addressed the issue of disproportionate sentences under the Eighth Amendment, applying the proportionality principles recognized in Justice Kennedy's concurrence in *Harmelin* to a sentence imposed under California's three strikes rule.  The Court found that Ewing's sentence of 25 years to life for felony grand theft was not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  *Id.* at 1190 (quoting *Harmelin*, 501 U.S. at 1005).

The petitioner raised this claim as Ground Four in his first habeas corpus petition filed in the Circuit Court of Fayette County.  (ECF No. 28, Ex. 1).  In denying the habeas petition, Judge Hatcher found that "[t]he sentences imposed by the Court were, under the law and the facts of the case, then and now lawful and appropriate sentences."  (ECF No. 29, Ex. 2).  The petitioner also raised this issue in his first habeas appeal.  The SCAWV found no error in Judge Hatcher's rulings and affirmed the judgment denying the petitioner's habeas petition.  (ECF No. 28, Ex. 2 at 3).

The petitioner was sentenced within the limits of the statutes under which he was convicted, and a sentence imposed within statutory limits is generally not subject to habeas review.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  Here, the West Virginia legislature has set sentencing ranges for sexual offenses by statute, and has found such crimes to be severe.  This court cannot find that sentences that are within the limits set by the state legislature shock the conscience of the court or society.  Furthermore, the trial court was within its discretion to run the sentences consecutively.  The petitioner has not demonstrated that his sentences were grossly disproportionate to his crimes of conviction.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that his sentences constitute cruel and unusual punishment, or that they in any way violate his federal constitutional rights. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Ground 4 of the petitioner's section 2254 petition.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respondent's Motion for Summary Judgment (ECF No. 18), **DENY** the petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

_____August 14, 2014_____
Date

_____
Dwane L. Tinsley
United States Magistrate Judge